1
2
3
4
5
6
7
8

NOT FOR CITATION

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12

ROGER ZAMGOLA,                          )      No. C 05-0975 JF (PR)
                                        )
13                                      )
                    Petitioner,         )      ORDER DENYING PETITION
14                                      )      FOR WRIT OF HABEAS
       vs.                              )      CORPUS
15                                      )
ROSANNE CAMPBELL, Warden,               )
16                                      )
                    Respondent.         )
17 _____ )

18
19          Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to

20  28 U.S.C § 2254, challenging his conviction of two counts of lewd acts on a child under the age

21  of fourteen by force, violence, or fear (California Penal Code, § 288 (b)(1)–counts 1 and 2), and

    three counts of lewd acts on a child under the age of fourteen (Cal. Penal Code § 288 (a)–counts
22
    3, 4, and 5).  The Court found that the petition stated sixteen cognizable claims and ordered
23
    Respondent to show cause why the petition should not be granted.[1]  Respondent filed an answer
24
    addressing the merits of the petition, and Petitioner filed a traverse.
25

26  _____

27      [1] The Court dismissed Petitioner's claim that law enforcement officers performed an illegal
    search of his premises at the time of his arrest, because Stone v. Powell, 428 U.S. 465 (1976),
28  bars federal habeas review of Fourth Amendment claims unless the state failed to provide an
    opportunity for full and fair litigation of those claims.

After reviewing the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

## I. BACKGROUND[2]

**A. Facts**

### 1. Prosecution Case

Eleven-year-old Brittany testified that defendant, her mother's former boyfriend, molested her. Defendant lived with Brittany and her mother for several months in 1999. Brittany identified body parts on a diagram, including a penis, which she referred to as a "thingy" and a vagina as a "cookie." On one occasion, Brittany was watching television in her bedroom, when defendant entered the room and sat on the bed. He touched her breast, kissed her on the mouth, and put his hand under her pajamas. He then touched her vagina and tried to put his penis in her vagina, but she pushed him away. Defendant left "white stuff" on her thighs. On another occasion, defendant took Brittany to the movies. While they were sitting in the theater, defendant put his hand inside her pants, touched her vagina, and digitally penetrated her. Brittany also testified that defendant picked her up from school one day. He touched her breasts and put his hand under her dress.

After defendant moved away, Brittany told her grandmother, Gloria J., about the incidents. Brittany and Gloria J. had previously seen a movie about a child molestation. Gloria J. testified that she and Brittany were playing a game, when Brittany said that she had a secret. Brittany told her that defendant entered her room naked several times. He had also been fondling her and had tried to penetrate her. Brittany said that defendant had left "white stuff" on her stomach and she "was trying to fight him off." Gloria J. then recalled that Brittany would always attempt to sit away from defendant. Brittany also had no respect for defendant. Gloria J. told Brittany's mother about the disclosure.

Renee J., Brittany's mother, testified that defendant was a former boyfriend with whom she had lived for eight to nine months. After defendant moved out, Renee J. continued to date him for five or six more months. Defendant would occasionally pick Brittany up from her baby-sitter and from school. Defendant also took Brittany to the movies on one occasion. According to Renee J., Brittany did not like defendant. Brittany had not been as distant with Renee J.'s other boyfriends and she had a good relationship with Renee J.'s current husband.

Officer Steve Slack testified that he interviewed Brittany. Brittany told him that defendant once entered the bedroom naked and touched her breasts. He then tried to put his penis in her vagina. He also kissed her on the mouth, and white stuff came out onto her thighs. She told Slack that on another occasion defendant took her to the movies. Defendant put his hand inside her pants, touched her vagina, and digitally penetrated her. Defendant also picked up Brittany from school one day. Defendant put his hand under her dress, touched her "cookie," and digitally penetrated her. Defendant later kissed her breasts and told her not to tell anyone.

---

[2] The relevant facts are elicited from the unpublished opinion of the California Court of Appeal, Sixth Appellate District, <u>People v. Roger Zamgola</u>, Case No. H023213, (December 3, 2002) at 2-4 (Respondent's Answer, Exh. C).

Officer Andrew Brown testified that he also interviewed Brittany, who told him about the bedroom and movie incidents. Mary Ritter, a physician assistant, testified that she conducted an examination of Brittany. She noted no injury to her genitals. However, she explained that lack of injury would be common where the sexual episode occurred several months earlier.

Carl Lewis, an investigator for the district attorney's office, testified as an expert witness on Child Sexual Abuse Accommodation Syndrome. Lewis knew neither the facts nor the charges in the instant case. He testified that his knowledge of CSAAS was based largely on the work of Roland Summit. Lewis testified that sexually abused children often keep the facts secret, feel helpless, delay disclosure, accommodate the abuse, and sometimes retract their reports. According to Lewis, not all of these behaviors occur in all cases, and in some cases, none of them occur. Lewis also testified that Summit emphasized that CSAAS was not "diagnostic" of sexual abuse, and that it would be improper to use it to determine whether sexual abuse had occurred in a particular case.

**2. Defense Case**

Micheline Nzessi, defendant's friend, testified that she had known defendant since 1998. She had five children, including two teenage girls, and she had no problem with them being around defendant. Nzessi had often seen defendant with Brittany and believed that Brittany did not like or respect him.

**B. Procedural History**

A Santa Clara Superior Court jury found Petitioner guilty of two counts of lewd acts on a child under the age of fourteen by force, violence, or fear, and three counts of lewd acts on a child under the age of fourteen. Petitioner was sentenced to twelve years in state prison.

On December 3, 2002, the California Court of Appeal affirmed in part but modified the judgment to reflect a conviction of the lesser included offense of lewd conduct in count one. The California Supreme Court denied a petition for review on February 19, 2003. Petitioner filed habeas petitions in the state trial court, appellate court, and supreme court, all of which were denied as of January 26, 2005. The instant federal petition was filed on March 8, 2005.

**II. DISCUSSION**

**A. Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under AEDPA, a federal court cannot grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or an involved an unreasonable application of, clearly established federal law,

1  as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was

2  based on an unreasonable determination of the facts in light of the evidence presented in the

3  State court proceeding."  28 U.S.C. § 2254(d)(2).

4        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

5  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

6  law or if the state court decides a case differently than [the] Court has on a set of materially

7  indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the

8  'unreasonable application clause,' a federal habeas court may grant the writ if the state court

9  identifies the correct governing legal principle from [the] Court's decisions but unreasonably

10  applies that principle to the facts of the prisoner's case."  Id.  "[A] federal habeas court may not

11  issue the writ simply because the court concludes in its independent judgment that the relevant

12  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

13  that application must also be unreasonable."  Id. at 411.

14        "[A] federal habeas court making the 'unreasonable application' inquiry should ask

15  whether the state court's application of clearly established federal law was 'objectively

16  unreasonable.'"  Id. at 409.  In examining whether the state court decision was objectively

17  unreasonable, the inquiry may require analysis of the state court's method as well as its result.

18  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The "objectively unreasonable"

19  standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.

20  The gloss of clear error fails to give proper deference to state courts by conflating error (even

21  clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

22        A federal habeas court may grant the writ if it concludes that the state court's

23  adjudication of the claim "resulted in a decision that was based on an unreasonable

24  determination of the facts in light of the evidence presented in the State court proceeding."  28

25  U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made

26  by a state court unless the Petitioner rebuts the presumption of correctness by clear and

27  convincing evidence.  28 U.S.C. § 2254(e)(1).

28  \\\

**B. Analysis of Legal Claims**

    **1.    Insufficient Evidence**

    Petitioner claims that the evidence presented at trial was insufficient to convict him.  In claim one of the petition, Petitioner alleges that the prosecution did not prove every element of the crimes charged.  In claim seventeen, Petitioner contends that the prosecution failed to establish more than the minimum facts of force necessary to accomplish the alleged acts.  Both claims attack the remaining count of lewd act with force on a child under fourteen.

    The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).[3]  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979),[4] which, if proved, entitles him to federal habeas relief, see id. at 324.

    A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at 319).  Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Payne 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992 (9th Cir. 1985), amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S.

---

    [3] Cf. Fiore v. White, 531 U.S. 225, 228-229 (2001) (due process violated where basic element of the crime not proven because statute did not prohibit defendant's conduct).

    [4] It is unreasonable to make a Petitioner plead all facts proved at trial and argue that they were insufficient to support the verdict.  An allegation that the evidence was insufficient to prove beyond a reasonable doubt an element of the crime is sufficient to warrant service of the petition.  See Williams v. Kullman, 722 F.2d 1048, 1051 (2d Cir. 1983).

1    1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984), cert. denied, 469 U.S. 838

2    (1984).

3         If confronted by a record that supports conflicting inferences, a federal habeas court

4    "must presume – even if it does not affirmatively appear in the record – that the trier of fact

5    resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

6    Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total

7    deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional

8    of circumstances, Jackson does not permit a federal habeas court to revisit credibility

9    determinations.  See id. at 957-58 (credibility contest between victim alleging sexual molestation

10   and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's

11   obvious credibility determination); see also People of the Territory of Guam v. McGravey, 14

12   F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely

13   on uncorroborated testimony of victim).

14        Circumstantial evidence and inferences drawn from that evidence may be sufficient to

15   sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  Mere suspicion and

16   speculation cannot support logical inferences, however.  Id.; see, e.g., Juan H. v. Allen, 408 F.3d

17   1262, 1278-79 (9th Cir. 2005) (granting writ where, after resolving all conflicting factual

18   inferences in favor of prosecution, only speculation supported Petitioner's conviction for first

19   degree murder under a theory of aiding and abetting).

20        After AEDPA, a federal habeas court applies the standards of Jackson with an additional

21   layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court must ask

22   whether the operative state court decision reflected an unreasonable application of Jackson and

23   Winship to the facts of the case.  Id. at 1275.[5]

24

25        [5] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C.

26   § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of
     the evidence claims.  See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc); Bruce,

27   376 F.3d at 956-57.  But in Juan H., the court concluded that "the Supreme Court's analysis in
      . . . Williams compels the conclusion that the state court's application of the Jackson standard

28   must be 'objectively unreasonable.'" Juan H., 408 F.3d at 1275 n.13 (quoting Williams v.
     Taylor, 529 U.S. 362, 409 (2000)).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Zamgola975den                6

1

###### a.      Proof of Every Element of the Crime Charged

2      Petitioner was convicted of three counts of violating California Penal Code § 288(a)

3 (counts three, four and five).  Sufficiency of the evidence claims are reviewed by looking at the

4 elements of the crime under state law.  Under California Penal Code § 288(a), the crime of lewd

5 and lascivious conduct upon a child under fourteen years of age has three elements: (1) the

6 personal touching of a child's body; (2) a child under fourteen years of age; and (3) "touching []

7 done with the specific intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of

8 that person or the child."  CALJIC No. 10.41.

9      In reviewing the underlying record, the Court concludes that there was sufficient

10 evidence to support Petitioner's convictions.  Brittany testified that Petitioner took her to a

11 romantic movie and during the film, "went inside [her] pants and he touched [her] thingy."

12 Respondent's Answer, Exh. B (Reporter's Transcript "RT") at 70.  Brittany identified her thingy

13 as her "cookie," the name she uses to describe her vagina.  Id. at 71.  Brittany also testified that

14 Petitioner used his hand and moved it inside of her underwear and over her vagina and inside her

15 vagina.  Id. at 71-72.

16      As to count four, Brittany testified that when she was in the fourth grade, Petitioner

17 picked her up from school and on the way home, he started to kiss her breasts and touched her

18 under her dress, on top of her underwear.  Id. at 75-76.  When they arrived home, he again

19 touched her, rubbing and kissing her breasts, which supports count five.  Id. at 76.

20      In support of the force allegation of count two, Brittany testified that Petitioner sat down

21 next to her on the bed while she was watching television.  Id. at 64.  He touched her breasts and

22 then touched her vagina; however, when he tried to put his penis into her vagina, Brittany pushed

23 him away.  Id. at 64-65.  In addition, Brittany's grandmother testified that Brittany reported to

24 her that she had to fight Petitioner off during the incident, id. at 120-121, and Officer Slack

25 testified that Brittany relayed a similar account to him regarding the incident, id. at 139-141.

26      Brittany's testimony and the testimony of her grandmother and Officer Slack constitute

27 evidence sufficient to establish that with respect to all counts, Petitioner touched the body of a

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Zamgola975den

child; the child was under fourteen years of age; and the touching was done with the specific

intent to arouse, appeal to, or gratify the lust, passions or sexual desires of Petitioner or the

victim.  Petitioner's complaint that the victim's testimony was not credible was resolved against

him by the jury.  This Court may not second guess the jury's conclusion.  Schlup v. Delo, 513

U.S. 298, 330 (1995) (explaining the Jackson standard for review of claims of insufficient

evidence).  Under California law, victim's testimony need not be corroborated by other evidence.

See CALJIC No. 10.60.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### b.    Evidence of Force

Under California law, to sustain a conviction for a lewd act against a victim under

fourteen years of age with force, violence, or duress, the force must be more than is necessary to

commit the act.  People v. Pitmon, 170 Cal. App. 3d 38, 45-46 (1985).  The state appellate court

defined force as an act which facilitates the lewd act rather than being merely incidental to it.

Resp. Exh. C at 4.  The court agreed with Petitioner that there was insufficient evidence to

support Petitioner's conviction of forcible lewd conduct with respect to count one, but it also

concluded that there was sufficient evidence to support Petitioner's conviction of forcible lewd

conduct with respect to count two.

In reviewing the sufficiency of the evidence claim, the state appellate court considered

"whether substantial evidence supports the decision, not whether the evidence proves guilt

beyond a reasonable doubt."  Id. citing to People v. Mincey, 2 Cal. 4th 408, 432 (1992).  "In

making this determination, the reviewing court must consider the evidence in a light most

favorable to the judgment and presume the existence of every fact the trier could reasonably

deduce from the evidence in support of the judgment."  Resp. Exh. C at 4, citing Mincey, 2 Cal.

4th at 432.

In California, "[a] defendant uses 'force' if the prohibited act is facilitated by the

defendant's use of physical violence, compulsion or constraint against the victim other than, or

in addition to, the physical contact which is inherent in the prohibited act."  People v. Bolander,

23 Cal. App. 4th 155, 163 (1994) (Mihara, J. concurring).  "[A]n act is forcible if force

1    facilitated the act rather than being merely incidental to the act." Id. at 164.

2         Count one was based on evidence that Petitioner touched Brittany's breast while they

3    were in the bedroom.  To establish the use of force, the prosecution relied on the testimony of

4    Officer Slack that Petitioner sometimes would force Brittany to stay in the room by placing his

5    hands on her back.  However, the state appellate court found that evidence of what Petitioner

6    would sometimes do was insufficient to prove that Petitioner forced Brittany to stay in the

7    bedroom on this particular occasion.  Accordingly, the court concluded that "there is insufficient

8    evidence that this lewd act was committed by force."  Resp. Exh. C at 5.  The court modified the

9    judgment to reflect a conviction of the lesser included offense of lewd conduct.  Id.

10        However, the state appellate court rejected Petitioner's claim of insufficient evidence of

11   force as to count two.  As to this count, there was evidence that Brittany pushed Petitioner's

12   hand away when he tried to penetrate her, and Petitioner then pulled Brittany on top of him and

13   again attempted to penetrate her as she was trying to fight him off.  The court found that

14   Petitioner's "use of force 'facilitated the act.'"  Id.  Petitioner's act of pulling Brittany on top of

15   him, as she fought him off, was an act not merely incidental to the lewd act.  Accordingly, there

16   is substantial evidence to support the use of force on count two.

17        Based upon its review of the underlying record, the Court concludes that the appellate

18   court's determination was not contrary to, or an unreasonable application of, clearly established

19   Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

20   of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

21        **2.    The Trial Court's Admission of Child Abuse Accommodation Syndrome
             (CSAAS) Evidence**

22

23        Petitioner next claims that the trial court violated his right to due process by admitting

24   evidence of Child Abuse Accommodation Syndrome (CSAAS).  Specifically, that "the [trial]

25   court committed prejudicial error by allowing the prosecution to introduce testimony of [an]

26   expert witness of child sexual abuse accommodation syndrome where there was to issue to

27   which the testimony was relevant and where prejudice to the defense outweighed any

28   conceivable probative value."  Petition at 50.  Petitioner asserts that the evidence was irrelevant

1  because the victim did not show specific characteristics of CSAAS, that it was highly prejudicial,

2  and that the admission of such evidence denied him due process.  Id. at 50-51.

3       The admission of evidence is not subject to federal habeas review unless a specific

4  constitutional guarantee is violated or the error is of such magnitude that the result is a denial of

5  the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021,

6  1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839

7  (1986).  Failure to comply with state rules of evidence is neither a necessary nor a sufficient

8  basis for granting federal habeas relief on due process grounds.  See Henry,197 F.3d at 1031;

9  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  While adherence to state

10  evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is

11  certainly possible to have a fair trial even when state standards are violated; conversely, state

12  procedural and evidentiary rules may countenance processes that do not comport with

13  fundamental fairness.  See id. (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983), cert.

14  denied, 469 U.S. 838 (1984)).  The due process inquiry in federal habeas review is whether the

15  admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally

16  unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley, 784 F.2d at 990.

17  Only if there are no permissible inferences that the jury may draw from the evidence may its

18  admission violate due process.  See Jammal, 926 F.2d at 920.

19       In order to obtain habeas relief on the basis of an evidentiary error, Petitioner must show

20  that the error was one of constitutional dimension and that it was not harmless under Brecht v.

21  Abrahamson, 507 U.S. 619 (1993).  Petitioner must demonstrate that the error had "'a substantial

22  and injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001)

23  (quoting Brecht, 507 U.S. at 623).

24       The state appellate court affirmed the trial court's admission of investigator Lewis's

25  expert testimony regarding CSAAS.  The court noted that the trial court admitted the testimony

26  to rebut implied misconceptions attributed to delayed reporting and accommodation that often

27  occur in child abuse cases and that otherwise may indicate a lack of credibility.

28

1   Resp. Exh. C at 5-6.  Evidence of CSAAS was admitted during the prosecution's case-in-chief to

2   preempt defense challenges to the victim's testimony.  Id.  Second, the court found specifically

3   that Mr. Lewis knew neither the facts nor the charges in the case prior to testifying.  Id. at 6.  The

4   appellate court recognized that Mr. Lewis's testimony focused on abused children as a class of

5   individuals, and that they "often keep the facts secret, feel helpless, delay disclosure,

6   accommodate to the abuse, and sometimes retract their reports."  Id.  Third, the court quoted the

7   trial court's limiting instruction:

> Evidence has been provided to you concerning Child Sexual Abuse
> Accommodation Syndrome.  This evidence isn't received and must not be
> considered by you as proof that the alleged victim's molestation claim is true.
> Child Sexual Abuse Accommodation Syndrome research is based upon an
> approach that is completely different from that which you must take in this case.
> The syndrome research begins with the assumption that a molestation has occurred
> and seeks to describe and explain the common reactions of children to that
> experience.  As distinguished from the approach that you are to presume the
> Defendant is innocent.  The People have the burden of proving his guilt beyond a
> reasonable doubt.  You should consider the evidence concerning the syndrome and
> its effects only for the limited purpose of showing, if it does, that the alleged
> victims reactions as demonstrated by the evidence are not inconsistent with her
> having been molested.

Resp. Exh. C at 6-7.

Finally, the court made reference to California case law concerning CSAAS:

> In People v. Gilbert 5 Cal. App. 4th 1372 (1992), this court discussed the
> parameters of expert testimony in a case involving the sexual abuse of a child.  In a
> case of alleged child sex abuse, it has been concluded that expert testimony from
> which it may be inferred that the victim manifests certain defined characteristics
> which are generally exhibited by abused children is not admissible, and may not be
> used by the jury, to prove that the victim was in fact abused on this occasion.  But
> in such a case such expert testimony is admissible to rehabilitate [the victim's]
> credibility when the defendant suggests that the child's conduct after the
> incident—e.g., a delay in reporting–is inconsistent with his or her testimony
> claiming molestation . . . .  Because the line between impermissible use of expert
> testimony to explain the emotional antecedents of abused children's seemingly
> self-impeaching behavior, is by no means a bright one, the better practice is to
> limit the expert's testimony to observations concerning the behavior of abused
> children as a class and to avoid testimony which recites either the facts of the case
> at trial or obviously similar facts.'  Id. at 1383 (internal quotations and citations
> omitted).

Id. at 7.

The appellate court concluded that the evidence of CSAAS in Petitioner's case was narrowly

tailored and that the jury was properly instructed as to the limited use of such evidence.  Id.

1    In United States v. Bighead, 128 F.3d 1329, 1330 (9th Cir. 1997) (per curiam), the Ninth

2    Circuit held that there was no abuse of discretion in the district court's admission of expert

3    testimony about certain characteristics of child sexual abuse victims in the prosecution's rebuttal.

4    The court noted that the expert did not testify about the facts of the particular case, or about the

5    particular victim, whom she had never examined.  Id.  Rather, the testimony was limited to

6    evidence of 'delayed disclosure' and 'script memory' which were indicative of abused children

7    as a class of individuals.  Id.  Further, in addressing a relevancy challenge, the court stated, "[the

8    expert's] testimony had significant probative value in that it rehabilitated (without vouching for)

9    the victim's credibility after she was cross-examined about the reasons she delayed reporting and

10   about the inconsistencies in her testimony."  Id.  The Ninth Circuit affirmed the defendant's

11   conviction, holding that, "[t]he district court did not abuse its discretion in permitting the expert

12   to testify. . . [regarding] her observations of typical characteristics drawn from many years

13   experience interviewing many, many persons, interviewed because they were purported victims

14   of child abuse."  Id. at 1330-31.  The Court also noted that, "[r]egardless, the jury was free to

15   determine whether the victim delayed disclosure or simply fabricated the incidents."  Id. at 1331.

16   In Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003), the court recognized that CSAAS

17   evidence "describes various emotional stages, experienced by sexually abused children, that may

18   explain their sometimes piecemeal and contradictory manner of disclosing abuse."  The court

19   observed that inconsistencies in a child's account of abuse, including delays in reporting, do not

20   necessarily mean the child is lying.  Ultimately, the Brodit majority approved of the California

21   Court of Appeal's holding in People v. Patino, 26 Cal. App. 4th 1737 (1994), that the use of

22   CSAAS evidence in a child abuse case does not necessarily offend a defendant's due process

23   rights.  Id.  The court concluded:

24        [W]e have held that CSAAS testimony is admissible in federal child-sexual-abuse
          trials, when the testimony concerns general characteristics of victims and is not used
25        to opine that a specific child is telling the truth.  (Citations omitted).  Although those
          cases did not address due process claims, both rejected the contention that CSAAS
26        testimony improperly bolsters the credibility of child witnesses and precludes
          effective challenges to the truthfulness of their testimony.
27        Id. (citing Bighead, 128 F.3d 1329; United States v. Antone, 981 F.2d 1059 (9th Cir.
          1992)).
28

1    Petitioner cites to no Supreme Court authority to support his claim that the trial court's

2    decision to admit evidence of CSAAS violated his right to due process.  Mr. Lewis did not

3    testify about the facts of the particular case, nor about the particular victim.  Rather, his

4    testimony was properly limited to often exhibited characteristics of child abuse victims as a class

5    of individuals.  The state appellate court determined that the trial court's limiting instruction

6    properly cautioned the jury that CSAAS evidence only could be used to show that the victim's

7    testimony was not inconsistent with symptoms commonly experienced by abused children, and

8    that it was offered in this case to rebut implied misconceptions that child abuse victims' delayed

9    disclosure and accommodation indicate untruthfulness.  Resp. Exh. C at 5-6.

10   Petitioner also contends that because the victim did not show specific characteristics of

11   CSAAS, the evidence was more prejudicial than probative.  Petition at 50.  However, as the state

12   appellate court concluded, CSAAS evidence serves to explicate the inferential gap between

13   inconsistencies in a child's account of abuse, namely, delayed disclosure and accommodation,

14   and their credibility.  Resp. Exh. C at 5.  Such symptoms are not necessarily indicative of

15   untruthfulness, but rather evidence of certain emotional stages experienced by sexually abused

16   children.  See also Brodit, 350 F.3d at 991.  As set forth in Bighead, it necessarily follows that

17   such testimony has significant probative value because it rehabilitates the victim's challenged

18   credibility, based on inconsistencies in testimony, delayed reporting, or any other established

19   CSAAS symptoms.  In the end, the jury was "free to determine whether the victim delayed

20   disclosure or simply fabricated the incidents."  Bighead, 128 F.3d at 1331.

21   Petitioner fails to demonstrate that the admission of CSAAS had "'a substantial and

22   injurious effect' on the verdict."  Brecht, 507 U.S. 619; Dillard, 244 F.3d at 767 (citations

23   omitted).  Thus, Petitioner fails to establish that the state appellate court's decision was contrary

24   to, or an unreasonable application of, clearly established United States Supreme Court precedent,

25   nor that it was based upon an unreasonable determination of the facts in light of the evidence

26   presented.  28 U.S.C. § 2254(d)(1), (2).

27   \\\

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Zamgola975den                         13

1        **3.      The Trial Court's Qualification of Carl Lewis Regarding CSAAS.**

2        Petitioner contends that the trial court violated his right to due process by permitting Mr.

3    Lewis to testify regarding Child Sexual Abuse Accommodation Syndrome.  Specifically, that

4    "the trial [sic] court's error. . . deprived [Petitioner of] his right of fair and impartial treatment

5    under. . . due process. . . by allowing into [the] prosecution's case an investigator with no

6    qualification of child sexual abuse accommodation syndrome."  Petition at 65-66.  Petitioner

7    contends that Mr. Lewis did not possess the requisite knowledge to testify regarding CSAAS and

8    that he was not sufficiently familiar with the facts of the case.  Id. at 66.

9        Under California law, "[a] person is qualified to testify as an expert if he has special

10   knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the

11   subject to which his testimony relates."  Cal. Evid. Code, § 720.  Furthermore, "[t]he trial court

12   is given considerable latitude in determining the qualifications of an expert and its ruling will not

13   be disturbed on appeal unless a manifest abuse of discretion is shown."  People v. Cooper, 53

14   Cal. 3d 771, 813 (1991) (quoting People v. Kelly, 17 Cal. 3d 24 (1976)).

15       Prior to trial, Mr. Lewis was qualified as an expert on CSAAS approximately fifty times

16   and provided testimony on the subject in the former Santa Clara Municipal Court, in the Santa

17   Clara and Monterey Superior Courts, and in this Court.  Resp. Exh. B at 199-200.  Mr. Lewis'

18   expertise stems from classroom training in 1992, his professional corroboration with social

19   workers on the subject, and his own study of professional literature, predominately that of

20   psychiatrist Roland Summit, who researched and identified Child Sexual Abuse Accommodation

21   Syndrome.  Id. at 198.

22       At trial, it was established that Mr. Lewis had sufficient education, knowledge, and

23   experience in the area of CSAAS to qualify as an expert.  In claiming that Mr. Lewis was

24   unfamiliar with the facts of the case, Petitioner fails to recognize the fundamental premise of

25   CSAAS testimony.  As discussed above, it actually is a best practice for a CSAAS expert *not* to

26   know any of the facts pertaining to any particular case.  As Mr. Lewis stated, "the syndrome [is

27   discussed] as it applies to children who report child sexual abuse.  The facts of any one case

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Zamgola975den                14

aren't necessarily significant in discussing the syndrome." Id. at 200-201.  CSAAS evidence is comprised of an elemental evaluation of symptoms often exhibited by abused children as a class. This premise was properly recognized by Mr. Lewis, and the trial court instructed the jury that the evidence could not be used to independently determine whether abuse occurred.  See Resp. Exh. C at 6.  Rather, the trial court expressly admitted the CSAAS testimony based on the frequency of implied misconceptions relating to the victim's credibility that would otherwise result.  Resp. Exh. C at 5.

This Court has concluded that evidence regarding CSAAS was properly admitted in Petitioner's case.  Mr. Lewis was not apprised of the facts of this particular case prior to testifying, he personally testified as to the limited uses of CSAAS evidence, and the trial court gave an appropriate limiting instruction regarding the scope of its admissibility.  Even assuming that Mr. Lewis was not qualified, any error was harmless because of his disinterested disposition, the limited use of the evidence as set forth by both the trial court's instruction and Mr. Lewis' testimony, and because the jury remained free to use its discretion in weighing the evidence.

Petitioner thus fails to establish that the trial court's qualification of Mr. Lewis as an expert on CSAAS was contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

### 4.    Claim of Innocence

Petitioner alleges that he is factually innocent of the charges in claim four.  In support of his claim, Petitioner challenges the trial court's admission of evidence of diagrams of boys' and girls' bodies.  Petition at 68.  He asserts that the admission of the diagrams violated his right to due process because they were irrelevant and inadmissible as material evidence because they lacked probative value.  Id.  Petitioner recites other claims within his petition in support of his claim of innocence.

As Respondent recognizes, claims of innocence fail to state an independent ground for federal habeas relief.  Herrera v. Collins, 506 U.S. 390, 400 (1993) (claims of actual innocence have never been held to state a ground for federal habeas relief absent an independent

1   constitutional violation occurring in the underlying state criminal proceeding).  However, the

2   Court nonetheless has reviewed Petitioner's challenge to the trial court's admission of the body

3   diagrams and concludes that the challenge is without merit.

4          As noted previously, a state court's evidentiary ruling is not subject to federal habeas

5   review unless a specific constitutional guarantee is violated or the error is of such magnitude that

6   the result is a denial of the fundamentally fair trial guaranteed by due process.  See Pulley v.

7   Harris, 465 U.S. 37, 41 (1984); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  The due

8   process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so

9   prejudicial that it rendered the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355,

10  1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986).

11         Here, the admission of the diagrams did not deny Petitioner a fair trial.  The trial record

12  reflects that the diagrams were used during the prosecution's direct examination of Brittany.

13  Brittany identified certain body parts, including the buttocks, the breasts, the vagina and the

14  penis using the diagrams.  Resp. Exh. B at 52-54.  The prosecution used the diagrams to test her

15  knowledge of the human body while she was testifying.  Because this information is relevant in

16  assessing the truthfulness of her testimony, the admission of the diagrams did not violate

17  Petitioner's right to due process.

18         Based upon its review of the underlying record, the Court concludes that the state court's

19  determination was not contrary to, or an unreasonable application of, clearly established

20  Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

21  of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

22         **5.     The Trial Court's Admission of the Victim's Statements to her Grandmother**

23         Petitioner next alleges that the trial court violated his right to due process by admitting

24  hearsay statements by Brittany to her grandmother into evidence.  Specifically, that "the [trial]

25  court committed procedural's [sic] error by allowing the prosecution to use [its] witness's [sic]

26  statement related to secrecy disclosure."  Petition at 79.  Petitioner is apparently challenging the

27  trial court's admission of the victim's hearsay disclosures regarding her being sexually molested

28  by Petitioner, which allegedly violated his right to due process.

1    As set forth above, the admission of evidence is subject to habeas review only if it

2    offends a specific federal constitutional or statutory provision, or if it deprives a defendant of the

3    fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031

4    (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839

5    (1986).  The due process inquiry in federal habeas review is whether the admission of evidence

6    was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v.

7    Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley, 784 F.2d at 990.  Only if there are no

8    permissible inferences that the jury may draw from the evidence can its admission violate due

9    process.  See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  Specifically,

10   Petitioner must identify such a fundamental error, and further establish that the error had "'a

11   substantial and injurious effect' on the verdict."  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir.

12   2001) (citations omitted).

13   Brittany's hearsay statements were admitted at trial pursuant to California Evidence Code

14   section 1360.  Under § 1360, a child victim's hearsay statement describing an act or attempted

15   act of child abuse is not inadmissible if the court finds that the statement is not otherwise

16   admissible; that the time, content, and circumstances of the statement provide sufficient indicia

17   of reliability; that the child either testifies at the hearing or there is corroborating evidence of the

18   hearsay statements; and that the proponent of the statement makes known to the adverse party

19   the intention to offer the statement sufficiently in advance of the proceedings.  See Cal. Evid.

20   Code § 1360.  Because Brittany testified and was cross-examined at trial, and because it is

21   uncontested that the prosecution gave sufficient notice, the only issue is whether the victim's

22   statements evidenced a sufficient indicia of reliability.  Resp. Exh. B at 81-97.  Out of the

23   presence of the jury, the trial court held that, "the grandmother and the officers provided

24   sufficient indicia of reliability that the Court is allowing those statements as exception to the

25   hearsay rule under Evidence Code Section 1360."  Id. at 174-75.

26   In Idaho v. Wright, 497 U.S. 805 (1990), the United States Supreme Court identified a

27   number of factors to be applied when determining whether a child declarant's statements bear

28   "particularized guarantees of trustworthiness."  The factors include: (1) spontaneity and

1    consistent repetition, (2) mental state of the declarant, and (3) use of terminology unexpected of

2    a child of similar age, lack of motive to fabricate.  Id. at 821-22 (citations omitted).  Although

3    the Supreme Court refused to set forth a "mechanical test" for such determinations, it found that

4    the enumerated factors "properly relate to whether hearsay statements made by a child witness in

5    child sexual abuse cases are reliable."  Id. at 821.  Ultimately, "the unifying principle is that

6    these factors relate to whether the child declarant was particularly likely to be telling the truth

7    when the statement was made."  Id.

8        Based on the factors set forth in Wright and California Evidence Code § 1360, this Court

9    concludes that Brittany's testimony bore an "adequate indicia of reliability."  The testimony of

10   Gloria Johnson (Brittany's grandmother) at trial established that Brittany spontaneously offered

11   details of her molestation by Petitioner during a game of "secrets" Brittany and Ms. Johnson

12   often played.  Resp. Exh. B at 115-116.  Brittany's testimony of what essentially were three

13   separate incidents of molestation was consistent with her grandmother's testimony, and with the

14   testimony of San Jose Police Officer Steve Slack, who interviewed Brittany in July 2000.  Resp.

15   Exh. B at 64-81; 115-121; 136-53.

16       Applying the second factor of Wright, there is nothing in the record, and nothing

17   cited by Petitioner, that shows that Brittany's mental state demonstrated a lack of reliability.

18   Petitioner's contentions that Brittany "disliked," "disrespected," and "disobeyed" him similarly

19   do not demonstrate unreliability.  Petition at 80-81.  Lastly, although Brittany referred to relevant

20   anatomy in her own terms while testifying, (e.g., as "cookie" and "thingy") there is every

21   indication that she is more familiar with sexual matters than other children her age.  Resp. Exh.

22   B at 52-55.  For example, Brittany described "white stuff" from Petitioner that ended up on her

23   thighs, and that he "tried to put his thingy into me but. . . [I] pushed away."  Id. at 65; 67-68.

24       Accordingly, the trial court's admission of the victim's grandmother's hearsay statements

25   was not contrary to, or an unreasonable application of, clearly established United States Supreme

26   Court precedent, nor was it based upon an unreasonable determination of the facts in light of the

27   evidence presented.  28 U.S.C. § 2254(d)(1), (2).

28   \\\

### 6.    The Prosecution's Suppression of Exculpatory Evidence

Petitioner claims that the prosecution suppressed exculpatory evidence when it objected at trial to defense counsel's introduction of a letter written by Renee Johnson, Brittany's mother, on October 18, 2000.  Additionally, he maintains that the prosecution suppressed a letter sent to him by Felicia Ebot on March 19, 2001.  Petition at 83.

In her letter to the trial court on behalf of Petitioner, Renee Johnson stated that she never saw or witnessed any wrong behavior by Petitioner and believes in her heart that Petitioner is innocent.  Ms. Johnson also mentioned that Brittany decided early on that she was going to give Petitioner a hard time.  The main purpose of the letter was to express her wishes that the case not go any further and that she would like the court to release Petitioner.  The second letter expressed Ms. Ebot's concerns about not having received a reply to two previous letters she had sent to Petitioner and to provide words of encouragement to Petitioner.  Petitioner's Exh. E (letter from Felicia Ebot dated March 19, 2001).

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.  The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682.

"There are three components of a true Brady violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999).  The evidence need not be sufficient to affirmatively prove the defendant innocent; it need only be favorable and

1  material.  <u>Gantt v. Roe</u>, 389 F.3d 908, 912 (9th Cir. 2004).

2       Respondent notes with respect to the letter written by Renee Johnson, Petitioner appears

3  to confuse a situation in which the prosecution suppresses evidence *before* trial with the right of

4  the prosecution to object to evidence *at* trial.  Defense counsel's cross-examination of Ms.

5  Johnson is summarized as follows:

6       "[Defense Counsel]: And when [Petitioner] was arrested, did you still have
        contact with him?

7
        "[Ms. Johnson]: Twice.
8
        "[Defense Counsel]: And did you mail him a letter?
9
        "[Ms. Johnson]: Yes.
10
        "[Defense Counsel]: Did you in fact want him released?  Did you want him out?
11
        "[Prosecution]: Objection.  Relevance, Your Honor.
12
        "The Court: I'm going to allow it.  You may answer.
13
        "[Ms. Johnson]: Yes."
14
        Resp Exh. B at 108.
15
        Based on defense counsel's questions, it is clear that counsel was in possession of the

16  letter written to Petitioner by Ms. Johnson.  There is no evidence in the record that Ms.

17  Johnson's letter was suppressed by the prosecution prior to trial.

18       As to Ms. Ebot's letter,[6] Petitioner fails to explain how the letter is exculpatory.

19  Respondent believes that Petitioner is asserting that the letter is relevant because it supports his

20  contention that Ms. Johnson persuaded her daughter to lie about the offense as a result of her

21  jealousy in seeing Petitioner in a store with Ms. Ebot.  Respondent's Mem. at 17.  However,

22  Respondent claims that the letter only supports an inference that Ms. Ebot was acquainted with

23  Petitioner and considered Petitioner a friend.  Petitioner states in his traverse that the letter was

24  from "the lady of the market (e.g. letter showing petitioner into the store to buy V.C.R. and TV).

25  With a female)."  Traverse at 14.  Ms. Ebot wrote that in her "first letter there were two receipt

26

27  ────────────────────

28  [6] The Court notes that Respondent refers to Felicia Ebot as Felicia Abot in its memorandum
    of points and authorities.

1  from the purchase of the T.V. stand in K-Mart and TV at Cosco [sic]."  Respondent's Answer,

2  Exh. A (Clerk's Transcript "CT") at 219.  Ms. Ebot's letter mentioned nothing about an incident

3  at a store involving Petitioner or Brittany's mother, Ms. Johnson.  Ms. Ebot expressed her "hope

4  [Petitioner is] doing fine as regards health."  Id.  Therefore, the inference Petitioner asks this

5  Court to make regarding Ms. Ebot's letter is not supported by the letter itself.  It is neither

6  material nor exculpatory within the meaning of Brady.  Moreover, as Respondent points out, the

7  fact that Ms. Ebot apparently had sent earlier letters to Petitioner does not support the conclusion

8  that the prosecutor was in possession of the letters and kept them from Petitioner.

9  Based upon its review of the underlying record, the Court concludes that the state court's

10  determination was not contrary to, or an unreasonable application of, clearly established

11  Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

12  of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

### 7.   Petitioner's Claim that the Police Interrogated him Without an Attorney Present.

Petitioner contends that his right to due process was infringed when he was interrogated

by police officers prior to his arrest without the presence of his attorney.  Specifically, Petitioner

alleges that "[o]n September 14, 2000, San Jose Police's [sic] investigator Officer Slack. . .

interrogated Petitioner at his office and on the phone prior to [his] arrest, without mention of

Petitioner's right[s] of Miranda[7] and assistance of counsel."  Petition at 84.  Petitioner alleges

that his due process right to a fair trial was violated, citing to Butler v. McKellar, 494 U.S. 407

(1990).  Id.

Butler, supra, relied on the Supreme Court's holding in Arizona v. Roberson, 486 U.S.

675 (1988) that "the Fifth Amendment bars police-initiated interrogation following a suspect's

request for counsel in the context of a **separate investigation**."  Butler, 494 U.S. at 411 (citation

omitted) (emphasis added).  The issue in Butler was whether this "new rule," which was decided

on the same day as the Fourth Circuit Court of Appeals' denial of Butler's rehearing petitions,

---

[7] Miranda v. Arizona, 384 U.S. 436 (1966).  Petitioner's claim of a Miranda violation will be discussed, infra, at 29-30.

1   should apply retroactively to Butler's case.  Although Butler was interrogated about a murder

2   while in custody for an unrelated assault and battery charge, for which he had invoked his right

3   to counsel, the Supreme Court upheld his murder conviction despite an apparent contravention to

4   the rule set forth in <u>Arizona v. Roberson</u>, <u>supra</u>.  The Supreme Court found that the new rule did

5   not apply retroactively on collateral review in that instance.  <u>Butler</u>, 494 U.S. at 415-16.

6           Here, Petitioner fails to set forth any factual basis in the record to analogize the instant

7   case to <u>Butler</u>.  He fails to mention any other charges pending against him, or any separate

8   investigations implicating him in other cases.  The only claim he sets forth affirmatively is that

9   "the police investigator. . . [failed] to read <u>Miranda</u> right[s] to Petitioner."  Petition at 84.

10  Whether Petitioner was improperly questioned by the investigator on September 14, 2000,

11  without the assistance of counsel, regarding the charges at issue in this case is a wholly different

12  question than that presented in either <u>Butler</u> or <u>Roberson</u>.

13          Respondent interpreted Petitioner's claim as alleging that he was impermissibly

14  questioned, without the assistance of counsel, subsequent to his Sixth Amendment right to

15  counsel having attached.  <u>See</u> <u>Kirby v. Illinois</u>, 406 U.S. 682, 688 (1972).  Although Petitioner

16  does not allege a Sixth Amendment violation, the right to counsel attaches "only at or after the

17  time that adversary judicial proceedings have been initiated against him."  <u>Id.</u>  Adversary judicial

18  proceedings are initiated by way of formal charge, preliminary hearing, indictment, information,

19  or arraignment.  <u>See</u> <u>United States v. Gouveia</u>, 467 U.S. 180, 188 (1984); <u>Brewer v. Williams</u>,

20  430 U.S. 387, 398 (1977); <u>see</u> <u>also</u> <u>Anderson v. Alameda</u>, 397 F.3d 1175, 1180 (9th Cir. 2005)

21  (police officer's filing of a probable cause complaint to request arrest of individual did not

22  initiate adversary criminal proceedings and therefore did not cause right to counsel to attach).

23  Attachment of the right to counsel alone does not guarantee a defendant the assistance of

24  counsel; the right must also be invoked by hiring an attorney or asking that one be appointed.

25  <u>See</u> <u>United States v. Harrison</u>, 213 F.3d 1206, 1209 (9th Cir. 2000).

26          Given Petitioner's failure to allege a factual basis sufficient to establish a due process

27  violation under <u>Butler v. McKellar</u>, <u>supra</u>, Petitioner fails to demonstrate that his September

28  2000 interrogation, without the assistance of counsel, had "'a substantial and injurious effect' on

1  the verdict." Brecht, 507 U.S. 619; Dillard, 244 F.3d at 767 (citations omitted).  Petitioner fails

2  to identify any incriminating statements he made during any interrogation, and the record

3  indicates that no statements made by Petitioner were admitted at trial.  Thus, Petitioner fails to

4  establish that the state court's decision was contrary to, or an unreasonable application of, clearly

5  established United States Supreme Court precedent, nor was it based upon an unreasonable

6  determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

7  **8.   Prosecutorial Misconduct**

8       Petitioner alleges that the prosecutor's conduct while Brittany was testifying violated his

9  right to due process.  Specifically, he alleges that the prosecution coached Brittany, "who was

10  unable to recall [sic] incident[s] of alleged [abuse] before the jury and court."  Petition at 89.

11  The Court concludes that this claim is without merit.

12       Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate

13  standard of review is the narrow one of due process and not the broad exercise of supervisory

14  power.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights

15  are violated when a prosecutors misconduct renders a trial "fundamentally unfair."  See id.;

16  Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of

17  alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

18  prosecutor").  Under Darden, the first issue is whether the prosecutor's remarks were improper;

19  if so, the next question is whether such conduct infected the trial with unfairness.  Tan v.

20  Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on

21  the merits, examining the entire proceedings to determine whether the prosecutor's remarks so

22  infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

23  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.) (citation omitted), cert. denied, 516 U.S. 1017

24  (1995).  Therefore, the proper focus is not on the conduct of the prosecutor, but whether the trial

25  was fair.  Smith, 455 U.S. at 219.

26       Here, Petitioner's prosecutorial misconduct allegation concerns the entirety of the

27  victim's testimony.  Petitioner claims that Brittany was "unable to recollect [sic] [the] facts

28  alleged."  Petition at 89.  Although it is clear from the record that Brittany did have some

1   difficulty at first, it also is clear that she was able to testify concerning her allegations against

2   Petitioner after a break and an opportunity to refresh her memory with the police report during

3   her testimony.  Resp. Exh. B at 57.  Petitioner fails to set forth any factual basis for his allegation

4   that Brittany was coached.  The record indicates that the prosecutor spoke with Brittany and her

5   father during a break, and that her memory was properly refreshed at one point during her

6   testimony.  Id. at 63-64; 66.  The prosecutor used the police report to refresh Brittany's memory

7   during her direct examination, and he asked that she read only a portion of Officer Slack's initial

8   report on the matter.  The jury also heard Brittany admit that she was nervous that she would not

9   be believed while testifying.  Id. at 81.

10   Petitioner has not shown that the prosecutor's behavior was improper or that the trial was

11   fundamentally unfair.  It is appropriate to refresh a witness' recollection during testimony, and it

12   is understandable that an admittedly nervous child-witness testifying about a molestation might

13   require such assistance.  Additionally, Petitioner fails to cite any specific facts in the record to

14   support his prosecutorial misconduct claim.  Accordingly, Petitioner fails to establish that the

15   state court's denial of this claim was contrary to, or an unreasonable application of, clearly

16   established United States Supreme Court precedent, nor that it was based upon an unreasonable

17   determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

18   **9.      Superior Court's Denial of Petitioner's Post-Conviction Discovery Request**

19   Petitioner claims that the failure of the superior court to deliver his "discovery package"

20   violated his right to due process.  On September 23, 2003, the Santa Clara Superior Court denied

21   Petitioner's request because there was no pending case before the court.  As of September 2003,

22   Petitioner was convicted and his conviction was affirmed with a modification on direct appeal.

23   On November 20, 2003, Petitioner again requested the discovery package, and on December 4,

24   2003 the Santa Clara Superior Court stated that there was no discovery package, but that there

25   was a police report, of which Petitioner could request copies for a fee.

26   Errors by the state court in the state post-conviction review process are not addressable

27   through federal habeas corpus proceedings.  See Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir.

28   1998); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989).  Such errors generally do not

1  represent an attack on the prisoner's detention and therefore are not proper grounds for habeas

2  relief.  Franzen, 877 F.2d at 26.  Instead they pertain generally to the review process itself and

3  not to the constitutionality of a state conviction.  Id.

4      Petitioner was convicted by a jury in the Santa Clara Superior Court on April 17, 2001.

5  He filed a timely appeal which was decided on December 3, 2002.  Petitioner's petition for

6  review in the California Supreme Court was summarily denied on February 19, 2003.

7  Petitioner's discovery request on November 20, 2003 was made well after the conclusion of his

8  direct appeal.  Since Petitioner's claim concerns an error in his post-conviction review, it is not

9  cognizable in this federal habeas proceeding.

10      Additionally, Petitioner's claim fails on the merits.  The superior court's letter to

11  Petitioner stated that "there is no discovery package in your case file."  Petitioner's Exh. X at 1.

12  Petitioner was notified that he could request copies of a police report in his court file on

13  December 14, 2003.  Thus, Petitioner's right to due process was not violated.

14      Based upon its review of the underlying record, the Court concludes that the state court's

15  determination was not contrary to, or an unreasonable application of, clearly established

16  Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

17  of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

18      **10.**    **The Prosecution Improperly Excluded All Qualified Jurors Based on Race.**

19      Petitioner next contends that the prosecutor committed misconduct by excluding all

20  eligible qualified jurors on the basis of their race in contravention of Batson v. Kentucky, 476

21  U.S. 79 (1986).  Because Petitioner has failed to set forth any factual or legal basis for his claim,

22  and there is no indication that the prosecution excluded jurors improperly under Batson,

23  Petitioner's claim fails.

24      Batson stands for the fundamental proposition that using peremptory challenges to

25  exclude jurors on the basis of race denies a defendant his constitutionally protected right to a fair

26  trial.  "More than a century ago, the Court decided that the State denies a black defendant equal

27  protection of the laws when it puts him on trial before a jury from which members of his race

28  have been purposefully excluded."  Id. at 85, citing Strauder v. West Virginia, 100 U.S. 303

1   (1880).  <u>Batson</u> held that "a defendant may establish a prima facie case of purposeful

2   discrimination in selection of the petit jury solely on evidence concerning the prosecutor's

3   exercise of peremptory challenges at the defendant's trial."  <u>Id.</u> at 96.  Once a defendant has

4   established that he is a member of a cognizable racial group, that the prosecutor has exercised

5   peremptory challenges to remove members of the defendant's race, and shown that the facts and

6   circumstances raise an inference of impropriety, the trial court must determine whether the

7   circumstances give rise to an inference of discrimination.  <u>Id.</u>, (citations omitted).  Once a

8   defendant has established prima facie discrimination, the burden shifts to the State to set forth a

9   neutral explanation for the apparent discrimination.  <u>Id.</u>

10      Here, although no transcript of the voir dire proceedings was prepared, the clerk's record

11   demonstrates that the defense made no objections to any of the prosecutor's peremptory

12   challenges.  Resp. Exh. A at 100-101.  Respondent points out that "[i]n accordance with

13   California Rules of Court, Rule 31, and in the absence of any specific request or showing in

14   accordance with California Rules of Court, Rule 31.1, the Reporter's Transcript of the Jury Voir

15   Dire, including any peremptory challenges by either side, was not designated as part of the

16   appellate record."  Resp. Exh. B at 20.  Based on the absence of a record indicating any potential

17   discrimination, and the fact that Petitioner again fails to set forth any factual basis for his

18   allegation, this Court must deny Petitioner's claim of prosecutorial misconduct based on <u>Batson</u>.

19      **11.   Ineffective Assistance of Counsel**

20      Petitioner claims that he was denied the effective assistance of trial counsel and appellate

21   counsel by his "attorneys" failure to raise claims addressed in the instant petition.  Petition at 85.

22   He also asserts that although the individual errors may not have been prejudicial, cumulatively

23   the errors affected his right to a fair trial.  <u>Id.</u>

24      A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

25   Amendment right to counsel, which guarantees not only the assistance of counsel, but that the

26   assistance be effective.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark

27   for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

28   proper functioning of the adversarial process that the trial cannot be relied upon as having

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Zamgola975den

1   produced a just result.  Id.

2        In order to prevail on an ineffective assistance of counsel claim, Petitioner must make

3   two separate showings: first, he must establish that counsel's performance was deficient, i.e., that

4   it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id.

5   at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance,

6   i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

7   of the proceeding would have been different."  Id. at 694.  A reasonable probability is a

8   probability sufficient to undermine confidence in the outcome.  Id.

9        Judicial scrutiny of counsel's performance must be highly deferential.  A court must

10   indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

11   professional assistance.  Id. at 689; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  The

12   relevant inquiry is not what defense counsel could have done, but rather whether the choices

13   made by defense counsel were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

14   1998).  The reasonableness of counsel's decisions must be measured against prevailing legal

15   norms at the time counsel represented the Petitioner.  Wiggins v. Smith, 539 U.S. 510, 524

16   (2003) (citing American Bar Association professional standards and standard practice in capital

17   defense at pertinent time).

18        Petitioner has the burden of "showing" that counsel's performance was deficient.

19   Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990).  Similarly, he must "affirmatively prove

20   prejudice."  Strickland, 466 U.S. at 693.  Conclusory allegations that counsel was ineffective do

21   not warrant relief.  Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995).  The Due Process Clause

22   of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel

23   on his first appeal as of right.  See Evitts v. Lucey, 469 U.S. 387, 391-410 (1985).[8]  Claims of

24   ineffective assistance of appellate counsel are reviewed according to the standard set out in

25

26        [8] Although the right to the effective assistance of counsel at trial is guaranteed to state

27   criminal defendants by the Sixth Amendment as applied to the states through the Fourteenth, see
     Lucey, 469 U.S. at 392, the Sixth Amendment does not address a defendant's rights on appeal;

28   the right to effective state appellate counsel is derived purely from the Fourteenth Amendment's
     due process guarantee, see id.

1   Strickland v. Washington, 466 U.S. 668 (1984).  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.

2   1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant therefore must

3   show that counsel's advice fell below an objective standard of reasonableness and that there is a

4   reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on

5   appeal.  Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d

6   at 849).

7       Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue

8   requested by defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart,

9   129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10.  The weeding out of weaker

10  issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See Miller,

11  882 F.2d at 1434 (footnote and citations omitted).  Appellate counsel therefore frequently will

12  remain above an objective standard of competence and have caused his client no prejudice for

13  the same reason -- because he declined to raise a weak issue.  See id.

14      Petitioner's claim of ineffective assistance fails with respect to both trial and appellate

15  counsel.  Petitioner's appellate counsel raised claims of the sufficiency of the evidence regarding

16  force and the propriety of admitting CSAAS evidence on direct appeal.  Trial counsel objected to

17  the admission of hearsay evidence.  A defendant can make out a claim of ineffective assistance

18  of trial counsel only by pointing to specific errors made by trial counsel, but Petitioner does not

19  allege specific errors on the part of his trial counsel.  See United States v. Cronic, 466 U.S. 648,

20  666 (1984).  With respect to appellate counsel's failure to raise the other claims in the instant

21  petition, Petitioner has not established any prejudice because the Court concludes that

22  Petitioner's additional claims are not meritorious.  Therefore, neither trial nor appellate counsel

23  acted unreasonably in failing to raise these claims.

24      Petitioner also alleges cumulative error.  Cumulative error is more likely to be found

25  prejudicial when the government's case is weak.  See, e.g., Thomas v. Hubbard, 273 F.3d 1164,

26  1180 (9th Cir. 2002) (noting that the only substantial evidence implicating the defendant was the

27  uncorroborated testimony of a person who had both a motive and an opportunity to commit the

28  crime); Walker v. Engle, 703 F.2d 959, 968 (6th Cir. 1983); cert. denied, 464 U.S. 951 (1983).

1   However, if no individual error rises to the level of a constitutional defect, nothing can

2   accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939,

3   957 (9th Cir. 2002); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999); Rupe v. Wood, 93 F.3d

4   1434, 1445 (9th Cir. 1996).

5       Petitioner's claim of cumulative error fails because none of the errors he alleges resulted

6   in a federal constitutional violation.  Petitioner thus fails to establish that counsels' performance

7   was constitutionally deficient, nor has he demonstrated any prejudice under Strickland.

8       Based upon its review of the underlying record, the Court concludes that the state court's

9   determination was not contrary to, or an unreasonable application of, clearly established

10   Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

11   of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

12       **12.**    **Petitioner was not Given a Proper Miranda Warning Prior to his Arrest**

13       Petitioner alleges that he was not Mirandized pursuant to his September 14, 2000 arrest.

14   He requests that the Court grant habeas relief because "Officer Slack . . . failed to Mirandize

15   Petitioner at the arresting stage."  Petition at 92.  Because Petitioner fails to provide any factual

16   basis for his contention, the Court concludes that there was no federal constitutional error.

17       In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that certain

18   warnings must be given before a suspect's statement made during custodial interrogation can be

19   admitted in evidence.  Miranda announced a constitutional rule that cannot be superseded

20   legislatively.  See Dickerson v. United States, 530 U.S. 428, 431-32 (2000).  Miranda and its

21   progeny govern the admissibility of statements made during custodial interrogation in both state

22   and federal courts.  See id. at 443-45.

23       Although Petitioner maintains that he was questioned by Officer Slack on September 14,

24   2000, he fails to cite to any evidence that the questioning elicited, or was intended to elicit, any

25   incriminating statements.  Petition at 92.  Petitioner fails to cite to any statements he made at the

26   time of his September 2000 arrest, or that any statements were used against him at trial.  Because

27   the remedy for a Miranda violation is the suppression of illegally obtained statements at an

28   accused's subsequent trial, Petitioner cannot establish any violation where there are no

1   statements in the record to suppress.  Thus, Petitioner fails to establish that the state court's

2   decision was contrary to, or an unreasonable application of, clearly established United States

3   Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in

4   light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

5          **13.     "Prejudicial" Punishment for Exercising Right to Appeal**

6          Petitioner claims that he was subjected to prejudicial punishment by the trial court

7   because of his intention to exercise his right to appeal.  Petition at 93-94.

8          State sentencing courts must be accorded wide latitude in their decisions as to

9   punishment.  See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987).  Generally, therefore, a

10  federal court may not review a state sentence that is within statutory limits.  See id.  However,

11  there are exceptions under the Due Process Clause and Eighth Amendment.  The Due Process

12  Clause requires that vindictiveness against a defendant for having successfully appealed play no

13  part in resentencing.  See United States v. Rapal, 146 F.3d 661, 663 (9th Cir. 1998).  It is also

14  well settled that an accused may not be subjected to more severe punishment simply because he

15  exercised his right to appeal.  See North Carolina v. Pearce, 395 U.S. 711 (1969).  For a

16  reasonable likelihood of vindictiveness to exist, there must be some triggering event, such as

17  reversal and remand.  Nulph v. Cook, 333 F.3d 1052, 1057-58 (9th Cir. 2003).  A vindictive

18  sentencing claim typically arises when a defendant successfully appeals, is convicted again on

19  remand, and is given a greater punishment.

20         Petitioner alleges that he was prejudicially punished by the trial court at sentencing

21  because he planned to appeal his conviction.  Petition at 93-94.  The record indicates that

22  Petitioner was sentenced on June 22, 2001.  Resp. Exh. B at 320-321.  At the sentencing hearing,

23  Petitioner did not indicate that he was planning to file an appeal.  In fact, Petitioner did not file a

24  notice of appeal until June 26, 2001.  Resp. Exh. A at 225.  Thus, the trial court could not have

25  known that Petitioner intended to exercise his right to appeal at the time of the sentencing

26  hearing.

27         Petitioner asserts that he received a "harsher" punishment because the trial court did not

28  impose the mitigated terms available.  Petition at 94.  However, this fact alone is insufficient to

1  establish his claim of vindictive sentencing.  "A state court's finding of an aggravating

2  circumstance in a particular case . . . is arbitrary or capricious if and only if no reasonable

3  sentencer could have so concluded." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 783 (1990).  The trial court

4  found that although Petitioner had no prior record, the victim was particularly vulnerable and

5  Petitioner took advantage of his position of trust and of confidence to commit the crimes.  Resp.

6  Exh. B at 326.  Therefore, the trial court found that the aggravating circumstances outweighed

7  the mitigating factors.  <u>Id.</u>

8          The trial court sentenced Petitioner to six years on count two, to a concurrent six-year

9  term on count one and to two years each on counts three, four and five.  Resp. Exh. A at 223.

10  For counts one and two, the midterm sentence is six years, which can be reduced to three years

11  based upon mitigating factors and can be increased to eight years if aggravating factors are

12  present.  Because the sentence is not unreasonable on its face, and given that Petitioner received

13  the midterm sentence, Petitioner's claim of prejudicial punishment fails.

14          Based upon its review of the underlying record, the Court concludes that the state court's

15  determination was not contrary to, or an unreasonable application of, clearly established

16  Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

17  of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

18          **14.    The Trial Court's Jury Instruction Pursuant to CALJIC No. 17.41.1**

19          Petitioner contends that the trial court erroneously instructed the jury pursuant to

20  CALJIC No. 17.41.1,[9] thereby violating his right to due process.   Specifically, he claims that

21  CALJIC 17.41.1 was inappropriate, and "invited. . . juror[s] who ha[d]. . . different opinion[s] to

22  be turned in by other jurors."  Petition at 100.

23          The trial court's instruction, pursuant to CALJIC No. 17.41.1, was neither contrary to, or

24  an unreasonable application of, clearly established federal law as set forth by the United States

25

26      [9]  At the time of Petitioner's conviction, CALJIC 17.41.1 provided: "The integrity of a trial
requires that jurors, at all times during their deliberations, conduct themselves as required by
27  these instructions.  Accordingly, should it occur that any juror refuses to deliberate or expresses
and intention to disregard the law or decide the case based on penalty or punishment, or any
28  other improper bases, it is the obligation of the other jurors to immediately advise the Court of
the situation."

1    Supreme Court.  In Brewer v. Hall, 378 F.3d 952, 956 (9th Cir. 2004), the Ninth Circuit Court of

2    Appeals rejected a federal habeas claim challenging CALJIC 17.41.1, concluding that "no

3    Supreme Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing

4    constitutional right" either on its face or as applied to the facts of the case.  The Brewer court

5    recognized that the California Supreme Court discontinued the use of CALJIC 17.41.1 in People

6    v. Engelman, 28 Cal.4th 436 (2002), because of its "potential to lead members of a jury to shed

7    the secrecy of deliberations [and] to draw the court unnecessarily into delicate and potentially

8    coercive exploration of the subject matter of deliberations."  Brewer, 378 F.3d at 957.  However,

9    the Ninth Circuit noted that in Engelman the California Supreme Court "did not find that the

10   instruction violated an established federal constitutional right, indeed, [the supreme court]

11   explicitly stated that no such constitutional violation resulted from the instruction."  Brewer, 378

12   F.3d at 957 (citing Engelman, 28 Cal. 4th at 444).  Accordingly, the Ninth Circuit held that

13   Engelman supported its conclusion that CALJIC 17.41.1 is not contrary to any existing Supreme

14   Court precedent.  See Brewer, 378 F.3d at 957.

15          Contrary to Petitioner's claim, the challenged instruction does not invite jurors to "turn

16   in" other jurors with different opinions, nor does it require that every word exchanged in

17   deliberation be reported.  Rather, the instruction attempts to ensure the proper functioning of the

18   jury by enabling the trial court to investigate jury misconduct if necessary.  The instruction does

19   not misstate the law: a juror may not refuse to deliberate, may not disregard the law, and may not

20   decide the case based on penalty or punishment or any other improper basis.  The sum of

21   Petitioner's argument is that it was wrong to remind the jurors to police each other's behavior

22   and to report any violation of these basic rules to the court promptly.  However, Petitioner fails

23   to show any constitutional violation or prejudice resulting therefrom.

24          Even if instructing the jury with CALJIC No. 17.41.1 were considered error, Petitioner

25   has not shown that the instruction so infected the entire trial that the resulting conviction violates

26   due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  In reviewing a faulty instruction,

27   the court inquires whether there is a "reasonable likelihood" that the jury has applied the

28   challenged instruction in a way that violates the Constitution.  Id. at 72, n.4.  If an error is found,

1   the court must also determine that the error had a "substantial and injurious effect or influence in

2   determining the jury's verdict" before granting relief in habeas proceedings.  Brecht v.

3   Abrahamson, 507 U.S. 619, 637 (1993).

4       Based on the underlying record, it does not appear that CALJIC 17.41.1 had "a

5   substantial and injurious effect" on the jury's verdict.  The jury deliberated and reached

6   unanimous guilty verdicts on all five counts, and there is no indication that the jury had any

7   difficulty reaching its verdict.  Resp. Exh. B at 312-18.  Furthermore, there is no evidence in the

8   record that the trial court was informed of any juror who refused to follow the law, or that the

9   challenged instruction affected the verdict.

10      The Court concludes that CALJIC No. 17.41.1 did not violate Petitioner's right to due

11   process because the instruction was not contrary to, or an unreasonable application of, Supreme

12   Court authority, nor was it based upon an unreasonable application of the facts in light of the

13   evidence presented.  28 U.S.C. § 2254 (d)(1), (2).

14      **15.   Petitioner's Claim the he was Subjected to Multiple Punishments for the
              Same Act in Violation of the Double Jeopardy Clause**

15      Petitioner claims that the trial court's sentence requires him to serve a concurrent and a

16   consecutive term for the same criminal act.  However, although Petitioner maintains that his

17   convictions in counts one and two were based on the same act, the record shows that the

18   convictions were based on two separate acts.

19      The guarantee against double jeopardy protects against (1) a second prosecution for the

20   same offense after acquittal or conviction, and (2) multiple punishments for the same offense.

21   See Witte v. United States, 515 U.S. 389, 395-396 (1995); United States v. DiFranceso, 449 U.S.

22   117, 129 (1980).  In contrast to the double jeopardy protection against successive prosecutions,

23   protection against multiple punishments is designed to ensure that the sentencing discretion of

24   courts is confined to the limits established by the legislature.  See Garrett v. United States, 471

25   U.S. 773, 793 (1985).  The Double Jeopardy Clause is not violated if "each [offense] requires

26   proof of a fact which the other does not."  Blockburger v. United States, 284 U.S. 299, 304

27   (1932).

28

Petitioner's claim concerns his sentence pursuant to California Penal Code section 667.6. California enacted Penal Code section 667.6, which deals with certain sex offenses and offenders, and has the purpose and effect of permitting in some cases and mandating in others the imposition of more severe criminal penalties than would otherwise be available.  California Penal Code section 667.7 established a special sentencing scheme for multiple sexual offenses under subdivisions (c) and (d).

California Penal Code section 667.6(c) provides that generally the court has discretion to impose full, separate, and consecutive terms "whether or not the crimes were committed during a single transaction."  People v. Craft, 41 Cal. 3d 554, 558-59 (1986) (footnote omitted).[10]  When the court sentences under section 667.6(c), however, it must state its reasons not only for imposing consecutive sentences, but also for sentencing under this provision rather than under the principal/subordinate scheme of section 1170.1(a).  See id. at 559.  Section 667.6(d), by contrast, provides that the court is without discretion in the matter, but must impose full, separate and consecutive terms "if such crimes involve separate victims or involve the same victim on separate occasions."  Id. (footnote omitted).[11]  When the court sentences under section 667.6(d), it need not give a statement of reasons.  See id.

A state court's failure to state its reasons for sentencing under section 667.6(c), even if required by state law, however, does not rise to the level of federal constitutional violation.  But a claim that Petitioner was improperly sentenced under section 667.6(d) is cognizable where the sentence under 667.6(d) results in a sentence in excess of state law authority.

California courts typically impose consecutive felony sentences shorter than the sum of

---

[10] Although section 667.6(c) allows separate punishment for crimes "committed during a single transaction," it does not affect 654, which prohibits multiple punishment under different code provisions for a single "act or omission," as long as each sexual offense was a separate act within the meaning of section 654.  See Craft, 41 Cal. 3d at 559 n.2.

[11] In determining whether crimes against a single victim were committed on separate occasions, "the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior.  Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."  Cal. Pen. Code § 667.6(d).

1   the statutory sentences.  Cal. Pen. Code § 1170.1(a).  Such sentences consist of the greatest term

2   of imprisonment imposed by the trial court (the principal term) plus one-third of the midterm for

3   each other felony conviction (the subordinate terms).  Id.  However, an exception to this

4   sentencing scheme exists for sexual offenses.  Cal. Pen. Code § 667.6(d). California Penal Code

5   section 667.6(d) requires the trial court to impose full, separate, and consecutive prison terms for

6   certain specified offenses, including committing lewd and lascivious acts in violation of section

7   288(b), provided the convictions "involve separate victims or involve the same victim on

8   separate occasions."  Id.  "In determining whether crimes against a single victim were committed

9   on separate occasions under this subdivision, the court shall consider whether, between the

10   commission of one sex crime and another, the defendant had a reasonable opportunity to reflect

11   upon his or her actions and nevertheless resumed sexually assaultive behavior."  Id.

12          California courts have held that because of the outrageous nature of violent sexual

13   offenses and the danger they pose to society, the severity of the punishment set out in sections

14   667.6(c) and (d) is not so disproportionate to the crimes as to shock the conscience and offend

15   fundamental notions of human dignity.  See People v. Wilson, 135 Cal. App. 3d 343, 356 (1982);

16   People v. Karsai, 131 Cal. App. 3d 224, 242 (1982); see also People v. Bestelmeyer, 166 Cal.

17   App. 3d 520 (1985) (imposition of sentence of 129 years upon conviction of multiple sex

18   offenses not cruel or unusual punishment).  Nor does the sentencing scheme for violent sex

19   offenses violate equal protection.  See Karsai, 131 Cal. App. 3d at 242; accord People v. Tung

20   Thanh Le, 154 Cal. App. 3d 1 (1984).

21          As Respondent points out, under California law, Petitioner's acts constituted separate

22   crimes.  Count one was established by the evidence that Petitioner touched Brittany's breast

23   while they were in the bedroom. Resp. Exh. C at 4.  Count two was established by the evidence

24   that Brittany pushed Petitioner's hand away when he tried to touch her vagina, and he pulled her

25   on top of him, and attempted to penetrate her as she was trying to fight him off.  Id. at 5.  Both

26   acts occurred on or around Easter 2000.  After Petitioner touched Brittany's breasts, Brittany

27   pushed his hand away.  Petitioner then had a reasonable opportunity to reflect on his action, but

28   nevertheless resumed his behavior, thus constituting two separate acts.  People v. Scott, 9 Cal.

1   4th 331 (1994) (fondling a victim and then having intercourse immediately thereafter constituted

2   two separate crimes).

3          Based on the plain language of section 667.6(d), the commission of distinct sexual acts

4   can be part of the same transaction for purposes of sentencing, but the acts can constitute

5   separate crimes.  Therefore, the trial court's conclusion that Petitioner's crimes occurred on the

6   "same occasion" within the meaning of section 667.6(d) was not the same as a determination that

7   only one crime occurred.  Thus, there is no double jeopardy violation based upon Petitioner's

8   sentence.

9          Based upon its review of the underlying record, the Court concludes that the state court's

10  determination was not contrary to, or an unreasonable application of, clearly established

11  Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light

12  of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

13                              **III. CONCLUSION**

14         The Court finds that Petitioner has failed to show any violation of his federal

15  constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for a

16  writ of habeas corpus is denied.  The Clerk shall enter judgment and close the file.

17         IT IS SO ORDERED.

18  DATED:   3/14/07

                                        _____
19                                      JEREMY FOGEL
                                        United States District Judge

20

21

22

23

24

25

26

27

28

1   A copy of this ruling was mailed to the following:

2

3   Roger Zamgola
    T-22174
4   Mule Creek State Prison
    PO Box 409099
5   Ione, CA  95640

6
    Juliet B. Haley
7   California Attorney General's Office
    455 Golden Gate Avenue
8   Suite 11000
    San Francisco, CA  94102-7004
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28